United States District Court
Southern District of Texas
**ENTERED**
March 07, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD COLLINS, | § | |
| TDCJ #1771986, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-15-3616 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | | |

## MEMORANDUM AND ORDER

Petitioner Chad Collins (TDCJ No. 1771986), a state inmate, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for aggravated robbery with a deadly weapon. (Docket Entry No. 1). Respondent[1] has filed a Motion for Summary Judgment (Docket Entry No. 9), to which Petitioner has filed no response. After considering all of the pleadings, the record, and the applicable law, the Court will grant Respondent's motion for summary judgment and dismiss this habeas petition.

## I. Background and Procedural History

Petitioner is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) as a result of a 2012 conviction for armed robbery in the 179th District Court, Harris County, Texas in cause number 1,302,740.[2] The State of Texas alleged the following in Petitioner's indictment:

---

[1] Effective May 1, 2016, Lorie Davis succeeded William Stephens as Director of the Texas Department of Criminal Justice - Correctional Institutions Division. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Davis is substituted in place of Stephens as the respondent in this case.

[2] *See* Petition, Docket Entry No. 1, at 2.

> CHAD COLLINS, hereafter styled the Defendant, heretofore on or about APRIL 12, 2011, did then and there unlawfully, while in the course of committing theft of property owned by JOSE CASTILLO, and with intent to obtain and maintain control of the property, INTENTIONALLY AND KNOWINGLY threaten and place JOSE CASTILLO in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, namely, A FIREARM.[3]

Collins pled not guilty and proceeded to trial.[4] A jury found Petitioner guilty, and the trial court sentenced him to thirty-two years' imprisonment on March 2, 2012.[5]

On direct appeal, Petitioner argued the following points of error:

> (1) the trial court erred in denying his motion to suppress the complainant's out-of-court identification because it was the product of an unlawful search and the identification technique was unconstitutionally suggestive; (2) the trial court erred in admitting the complainant's in-court identification because it was unreliable considering the totality of the circumstances; (3) the trial court violated his right to due process by admitting evidence of the complainant's out-of-court identification without instructing the jury on the unreliability of eyewitness identification; (4) the trial court abused its discretion by admitting evidence of an extraneous offense; and (5) the trial court's assessment of court costs was unlawful.

*Collins v. State*, No. 01-12-00238CR, 2014 WL 1318882, at *1 (Tex. App.—Houston [1st Dist.] Mar. 31, 2014, pet. ref'd). The Texas intermediate appellate court rejected Petitioner's arguments and affirmed his conviction after summarizing the background facts and evidence at trial, as follows:

> As Jose Castillo and his friend James Mzrazek stood talking in the parking lot of Mzrazek's apartment one night, a car drove through the lot, turned around, and stopped behind Mzrazek. A man got out of the car, approached Mzrazek from behind and, pointing a gun at his back, told him, "[d]on't turn around or I'll shoot you." He then pointed the gun over Mzrazek's shoulder at Castillo and ordered Castillo to empty his pockets. Once Castillo complied and gave him his wallet, the man ordered Castillo and Mzrazek to lie on the ground, and drove off.

[3] Indictment, Docket Entry No. 10-2, at 17.

[4] Petition, Docket Entry No. 1, at 2.

[5] *Id*.

Castillo called 911 and when Houston Police Department Officers Carreon and Wyssbrod arrived Castillo provided them a description of the assailant and his car. Officer Carreon then prepared a BOLO ("be on the lookout") alert which was transmitted to other officers on patrol.

That same evening, Officer Duran was conducting random license plate checks in the area when he pulled appellant over on a traffic stop for driving with an expired registration sticker. Appellant provided his driver's license when requested but, since it was his girlfriend's car, he was unable to produce proof of insurance. During the stop, Duran felt that appellant was "squirmy" and "shaky" and this nervous demeanor prompted Duran to ask if appellant had any weapons in the car. When appellant replied "no," Duran asked for consent to search, and appellant consented. Because of appellant's considerable size (variably described as tall as six foot five inches), Officer Duran handcuffed appellant before removing him from the vehicle for safety reasons. Once outside the car, as part of the pat down/frisk for weapons, Duran reached into appellant's pockets and removed a credit card issued to "Jose Castillo" which appellant explained belonged to his "Mexican homie" who had accidentally left it in the car. After Duran placed appellant in his patrol car, he ran a check on the card and determined that it had not been reported as stolen and returned it to appellant. During his search of appellant's car, Officer Duran noticed a hoodie lying in the backseat on top of a pile of clothes and trash. Officer Duran completed his search and released appellant without issuing a citation.

As he began to fill out his paperwork on the traffic stop, he watched appellant pull into the nearby adjacent Sellers Brothers gas station. Listening to the police radio and reading his computer screen, Duran was then alerted to the earlier BOLO on a black suspect and Hispanic complainant and called Officer Carreon, who informed him that the complainant's name was Jose Castillo. Believing that there was no time to call for back-up, Duran approached appellant at the gas station, told him that he thought he had left his flashlight in appellant's car, and obtained his consent to search the car again. Appellant complied and was again handcuffed and placed in the back of Duran's patrol car. Officer Carreon arrived soon thereafter and, believing appellant could be the person who robbed Castillo, contacted Castillo to come to the Seller Brothers and identify the man Castillo later testified was described by Carreon as a "suspect."

Castillo identified appellant as the one who had robbed him but noted that the one who robbed him had worn a black hoodie. Recalling the hoodie in the back of appellant's car, Officer Duran retrieved it. Castillo recognized it because the robber's hoodie had the same design on the back. After Castillo identified appellant, Officer Carreon showed him the credit card retrieved from appellant's pocket, and Castillo confirmed it as his.

> Appellant was subsequently charged and indicted with aggravated robbery with a deadly weapon. At a pre-trial hearing, the court denied appellant's motions to suppress the items seized as a result of the two stops, the out-of-court identification, and in-court identification.
>
> The trial court also denied appellant's motion to suppress extraneous offense evidence, ruling that such evidence was admissible to prove appellant's identity. At trial, the State introduced evidence that appellant had robbed Kathryn Scurry and Rachel Dorval at gunpoint as they sat in their car in a parking lot two days earlier at 9:59 p.m., approximately eighteen miles from the location where appellant had robbed Castillo and Mzrazek. The robber had placed a gun to Scurry's head, and demanded their purses, threatened to shoot them and told them to put their heads down and count to thirty. Scurry, who had only an obscured view, noted that the robber was African–American and wore a black hoodie with white stitching on the back. Dorval, who had been in the driver's seat and had a better view, described him as a lighter-skinned black man, with a goatee, and wearing jeans and a black hoodie with stitching on the back. Dorval described the suspect's vehicle as a silver-colored Chevy.
>
> Later that night after the robbery, Scurry sent several text messages, directed to appellant, to Dorval's stolen cell phone, expressing her anger at him for robbing them. Officer Duran, who discovered Dorval's cell phone in his search of appellant's car two days later when Castillo was robbed, noticed the text messages and was able to trace the phone to Dorval. Officer Duran asked Dorval and Scurry to come to the police station to view a photo array that included a photo of appellant. Scurry, who had only seen a silhouette of appellant's face during the robbery, hesitated and eventually identified someone other than appellant. Dorval, who had had a better view of the suspect, identified appellant as the robber from the photo array and later again in court. At trial, Dorval also identified the black hoodie with white stitching on the back that police recovered from appellant's car as the one appellant had worn during the robbery.

*Collins*, 2014 WL 1318882, at *1–3. The Texas Court of Criminal Appeals subsequently refused Petitioner's petition for discretionary review on or around July 23, 2014.[6] Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.[7] On June 15, 2015, Petitioner filed a state application for writ of habeas corpus in the 179th District Court of Harris

[6] Petition, Docket Entry No. 1, at 3.

[7] *Id.*

County, Texas, in cause number WR-1302740-A.[8] On September 9, 2015, the Texas Court of Criminal Appeals denied the application without written order.[9]

In a federal habeas corpus petition that was executed on December 3, 2015, Petitioner raises the following claims:

1. The search and seizure incident to a traffic stop violated Petitioner's Fourth Amendment rights.
2. The show-up identification at the scene was impermissibly suggestive.
3. The introduction of extraneous offense evidence violated Petitioner's Fourteenth Amendment right to due process.[10]

Petitioner seeks a reversal of the judgment and a remand to state courts for a new trial with the exclusion of the evidence obtained from the alleged illegal search and seizure. Respondent has filed a Motion for Summary Judgment, to which Petitioner has filed no response in opposition. The § 2254 proceeding is ripe for adjudication.

## II. Standard of Review

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of initially raising the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.,* 950 F.2d 272, 276

---

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.*

(5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Houston Pipeline Co.,* 37 F.3d 22 4, 227 (5th Cir. 1994).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86, 103 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter,* 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." *Id*. at 99. For AEDPA to apply, a state court need not state its reasons for its denial, nor must it issue findings, nor need it specifically state that the adjudication was "on the merits." *Id*. at 98-99.

The Texas state courts adjudicated Petitioner's claims on the merits on direct appeal and habeas review. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Id*. (citation omitted); *see also Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied

federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *Haines v. Kerner,* 404 U.S. 519 (1972); *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir.1999). Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines,* 404 U.S. at 521. Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail,* 975 F.2d 192, 193 (5th Cir.1992).

A motion for summary judgment "cannot be granted simply because there is no opposition." *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the unopposed motion and grant summary judgment when a prima facie showing for entitlement to judgment is made. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Rayha v. United Parcel Serv., Inc.*, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996).

## III. Ground One: Illegal Search and Seizure

Petitioner contends that the search and seizure incident to the traffic stop was illegal because Officer Duran allegedly lacked probable cause or reasonable suspicion when he searched Petitioner and seized the credit card bearing the name of the complainant, Jose Castillo. Petitioner raised this issue on direct appeal, and the Texas state courts considered and rejected

this claim. *See Collins*, 2014 WL 1318882, at *4-6; *Collins v. State*, PD-0623-14 (Tex. Crim. App. Jul. 23, 2014), Petition for Discretionary Review, at 6-9; Docket Entry No. 10-22 (pet. ref'd without written order).

It is well established that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494 (1976) (footnote omitted). The existence of state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, whether or not a defendant availed himself of those processes, serves the policies underlying *Stone*'s exclusionary rule and bars federal habeas corpus consideration of claims. *See Caver v. State of Alabama,* 577 F.2d 1188, 1192-93 (5th Cir. 1978). The *Stone* bar "applies to all claims arising under the Fourth Amendment," including challenges to an arrest or the seizure of evidence. *Hughes v. Dretke,* 412 F.3d 582, 596 (5th Cir. 2005). Here, Petitioner not only had the opportunity for full and fair adjudication of his Fourth Amendment claim on direct review in state court, he availed himself of that opportunity and fully litigated this issue in that forum. Accordingly, *Stone* forecloses federal review of Petitioner's Fourth Amendment claims and Petitioner's first ground will be dismissed.

## IV. **Ground Two: Show-up Identification**

Petitioner also contends that the show-up identification procedure violated his Fourteenth Amendment right to due process. Respondent argues that review of this ground is barred because Petitioner did not raise this issue on direct review in his petition for discretionary review to the Texas Court of Criminal Appeals. *See Collins*, PD-0623-14, Petition for Discretionary

Review, at 2 n.1 (explaining that the issue of in-court and out-of-court identification were not at issue on discretionary review); *see also Ex parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1998). In *Gardner*, the Texas Court of Criminal Appeals held that claims that could have been raised on direct appeal may not be raised in a post-conviction writ of habeas corpus. *See id.* at 199-200. Respondent argues that Petitioner procedurally defaulted his identification claim (Ground Two) by not pursuing that claim in his petition for discretionary review and that this procedural default under *Gardner* is an independent and adequate state ground to bar federal review.

"[A federal habeas corpus court] will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Lee v. Kemna*, 534 U.S. 362, 375 (2002). To qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009)); *see also Smith v. Black*, 970 F.2d 1383, 1386 (5th Cir. 1992) (citations omitted).

The Fifth Circuit has held that the rule in *Gardner* is independent and adequate to bar federal habeas review where the petitioner failed to raise a constitutional issue on direct appeal. *See Walker v. Stephens*, 583 F. App'x 402, 403 (5th Cir. Oct. 31, 2014) (unpublished op.) (citing *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005)). However, as Respondent notes, the Fifth Circuit has indicated that the rule in *Gardner* does not appear to be regularly followed in cases such as Petitioner's, where a petitioner raised claims on direct appeal to a state intermediate appellate court, but not to the Texas Court of Criminal Appeals in a petition for discretionary review. *See Walker*, 583 F. App'x at 403; *see also Crocker v. Stephens*, Civ. A. No. H-15-1433,

2015 WL 7871354 (S.D. Tex. Dec. 3, 2015). Although Respondent points out that *Walker* is an unpublished opinion and that the state conceded in *Walker* that the *Gardner* rule was not regularly followed at the time in question, Respondent does not otherwise establish that the rule in *Gardner*, at the time Petitioner's case was adjudicated in state court, was regularly followed such that it would be fair to apply the procedural bar to Petitioner's second ground for relief.

Regardless, Respondent alternatively and correctly asserts that Petitioner's claim lacks merit. The record reflects that the Texas intermediate appellate court analyzed Petitioner's claim under the factors set forth in *Neil v. Biggers*[11] regarding the out-of-court identification procedure. *Collins*, 2014 WL 1318882, at *7. Specifically, the state intermediate appellate court evaluated the *Biggers* factors regarding the complainant-witness's view of the robber, level of attention, detailed description of the robber and the get-away car, and degree of certainty in his positive identification of the Petitioner. *Id.* The appellate court also noted the close time proximity between the commission of the crime and the identification. *Id.* Taking these factors together, the court concluded that the identification procedure was not impermissibly suggestive under the totality of the circumstances. *Id.* at *8. Reviewing the record, the Court concludes that the state court's conclusion that the identification was not impermissibly suggestive was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d)(1), (2). Accordingly, Petitioner's second ground will be dismissed.

[11] 409 U.S. 188, 199 (1972).

## V. <u>Ground Three: Extraneous Offense Evidence</u>

Petitioner contends that he was denied due process of law under the Fourteenth Amendment because the state district court allowed the prosecutor to introduce extraneous evidence of another, similar robbery that occurred two nights before the robbery in question.

Admissibility of evidence is a matter of state law, and only a contention that the admission of the challenged evidence rendered the trial fundamentally unfair or violated a specific constitutional right will be considered in a federal collateral proceeding. *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir. 1989). In other words, an evidentiary error in a state trial does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of "fundamental fairness" under the Due Process Clause. *Hafdahl v. Johnson,* 251 F.3d 528, 536 (5th Cir. 2001) (citing *Blankenship v. Estelle*, 545 F.2d 510, 516-17 (5th Cir. 1977)).

Here, the state intermediate appellate court applied Rule 404(b) of the Texas Rules of Evidence to the circumstances and found the evidence admissible because it was relevant to Petitioner's identity as the perpetrator of the robbery. *Collins*, 2014 WL 1318882 at *10-11 (quoting Tex. R. Evid. 404(b)). The court also found that the probative value of such evidence outweighed the danger of unfair prejudice because the evidence made Petitioner's identity as the robber more probable, the trial court used a limiting instruction to limit the effect on the jury, and the State's need for the extraneous evidence was high. *Id.* at *11-12. Petitioner raised this ground for relief in his petition for discretionary review, which the Texas Court of Criminal Appeals refused without written order. *See Collins*, PD-0623-14 , at Docket Entry No. 10-22; *see also* Petition for Discretionary Review, Docket Entry No. 10-21, at 3-6.

On state habeas review, the state habeas court also concluded that Petitioner's claim regarding the introduction of an extraneous offense in the primary case, raised and rejected on

direct appeal, is not cognizable in post-conviction habeas proceedings. *See* State Habeas Corpus Record, Docket Entry No. 10-28 at 51 (Findings of Fact and Conclusions of Law).

Petitioner fails to demonstrate that evidence regarding a substantially similar robbery was admitted in error or that the wrongful admission of the evidence resulted in a denial of fundamental fairness. Accordingly, he fails to show that he was denied due process of law as a result of the state trial court's evidentiary rulings. Absent such a showing, Petitioner fails to establish that the state habeas court's decision to reject his due process claim was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent. Accordingly, Petitioner is not entitled to federal habeas relief on his third ground for habeas relief.

## VI. Certificate of Appealability

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.; Beazley v. Johnson,* 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Beazley,* 242 F.3d at 263 (quoting *Slack,* 529 U.S. at 484); *see also Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte,* without requiring further briefing or argument. *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth in the Memorandum and Order, the Court has determined that petitioner has not made a showing that reasonable jurists could disagree regarding the Court's ruling. Therefore, a certificate of appealability from this decision will not issue.

## VII. Conclusion and Order

Based on the foregoing, the Court **ORDERS** the following:

1. Respondent's motion for summary judgment (Docket No. 9) is **GRANTED**.
2. Petitioner's federal petition for a writ of habeas corpus is **DENIED**.
3. A Certificate of Appealability is **DENIED**.
4. All other pending motions, if any, are **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 7th day of March, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE